IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

NEW BERRY, INC., )
)
) 2:18-CV-01528-MJH
Plaintiff, )
)
vs. )
)
MANITOBA CORPORATION, )
)
Defendant, )

OPINION AND ORDER

Plaintiff, New Berry, Inc. ("Berry Metal") brings the within action for damages related to its purchase of copper wire briquettes from Defendant, Manitoba Corporation ("Manitoba"). Plaintiff, Berry Metal, filed its Complaint in the Butler County Court of Common Pleas on November 2, 2018. Defendant, Manitoba, filed a Notice of Removal on November 14, 2018. (ECF No. 1-3). In its Complaint, Berry Metal asserts claims for Breach of Contract (Count I), Breach of Implied Warranties (Count II), Negligence (Count III), and Strict Liability (Count IV). (ECF No. 1-2). Berry Metal further claims, among other damages, punitive damages and attorney's fees. *Id.*

Pending before the Court is Manitoba's Motion to Dismiss for Failure to State a Claim. (ECF No. 3). Upon review of the Complaint (ECF No. 1-2), Defendant's Motion to Dismiss and Brief in Support (ECF No. 3 and 4), Plaintiff's Brief in Opposition (ECF No. 6), Defendant's Reply Brief (ECF No. 7), Plaintiff's Sur-Reply Brief (ECF No. 10), and Defendant's Sur-Sur-Reply Brief (ECF No. 14), and the arguments of counsel, Manitoba's Motion to Dismiss for failure to state a claim is granted.

## I. Background

Pursuant to the terms of Berry Metal's Purchase Order, Manitoba sold and Berry Metal purchased approximately 15,000 pounds of FM1200 Copper as ordered for Berry Metal's specification of copper wire briquettes having a certain minimum purity. (ECF No. 1-2 at ¶ 6). On May 3, 2018, Manitoba emailed a Sales Order to Berry Metal. (ECF No. 3-1). Said Document was not attached to the Complaint, but it was attached to Manitoba's Motion to Dismiss. *Id.* Later, that same day, May 3, 2018, Berry Metal emailed a Purchase Order to Manitoba. *Id.* In its Response to Manitoba's Motion to Dismiss, Berry Metal submitted an affidavit from Andrea Werner, a Berry Metal employee, wherein she acknowledges that Berry Metal received the May 3, 2018 Manitoba email containing the Sales Order and Terms of Sale attached. (ECF No. 6-2). The Manitoba Terms of Sale provided in relevant part as follows:

> THE WARRANTY IN THIS SECTION IS EXCLUSIVE AND IN LIEU OF ALL OTHER INDEMNITIES OR WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLDING THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.
>
> \*\*\*
>
> LIMITATION ON DAMAGES: Under no circumstances shall the Seller be liable for incidental, consequential or punitive damages.

(ECF No. 3-1, Ex. 2 at ¶¶ 5-6).

Manitoba delivered the copper briquettes and certified that they met Berry Metal's specifications. *Id.* at ¶ 8. After sample testing the briquettes, Berry Metal placed the supplied copper into its controlled foundry process, which resulted in higher than typical failure rates in the copper castings. *Id.* at ¶ 10. Due to steel contaminations within the briquettes, Berry Metal was forced to change crucibles and stop work at its foundry. *Id.* at ¶¶ 11-12. As a result, Berry Metal alleges that (a) multiple crucibles were damaged and needed replacement; (b) numerous

castings were scrapped during the months of June, July, and August 2018, and (c) significant work time and labor costs, attributable to the determination and correction of Manitoba's non-conforming product, were expended. *Id.* at ¶ 15. In its *ad damnum* clauses for Counts I-IV of the Complaint, Berry Metal also asserts claims for attorney's fees. *Id.* at pp. 5, 7, 8, and 9. In its *ad damnum* clauses for Counts III and IV of the Complaint, Berry Metal alleges claims for punitive damages. *Id.* at pp. 8-9.

## II. Standard of Review

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler*

*v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

Finally, if the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. The Court of Appeals has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236 (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002)).

### III.     Discussion

In its Motion to Dismiss, Defendant, Manitoba, seeks to (1) dismiss Plaintiff's demand for incidental and consequential damages in all four counts, (2) dismiss Plaintiff's Breach of Implied

Warranties count, (3) dismiss Plaintiff's Negligence and Strict Liability counts, and (4) dismiss Plaintiff's demand for attorney's fees in all four counts. (ECF No. 3 and 4).

### a. Applicability of Manitoba's Sales Order and Terms of Sale

The controlling issue, germane to Counts I and II, is whether the terms, contained within in Manitoba's Sales Order and accompanying Terms of Sale, apply to the transaction between Berry Metal and Manitoba. Both parties acknowledge that the initial Manitoba Sales Order and Terms of Sale were emailed to and received by Berry Metal (ECF Nos. 3-1 and 6-2); therefore, the Court will determine the effect of said transmittal and receipt upon the contractual relationship between the parties and the Plaintiff's claims in this case.

As regards the applicability of Manitoba's Sales Order and Terms of Sale, the parties cite to Section 2-207 of the Uniform Commercial Code, generally referenced as the "battle of forms" section. Section 2-207 governs transactions where additional terms are conveyed during the parties' exchanges of communications regarding offer and/or acceptance. Section 2-207 of the UCC provides that:

> (a) *General rule.* — A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (b) *Effect on contract.* — The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
>> (1) the offer expressly limits acceptance to the terms of the offer;
>> (2) they materially alter it; or
>> (3) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

13 Pa.C.S. § 2207; N.Y. U.C.C. Law § 2-207.[1] Under the UCC, "[w]here a buyer makes a definite and seasonable expression of acceptance of a seller's offer, a contract is formed on the seller's terms." *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003); *See also Stemcor USA, Inc. v. Trident Steel Corp.*, 471 F.Supp.2d 362, 366 (S.D.N.Y. 2006). The timeline of the traded documents has been described by the parties as follows:

- May 3, 2018, at 9:16 a.m. Manitoba sent the Sales Order and Terms of Sale by email to Berry Metal.

- May 3, 2018 at 2:35 p.m. Berry Metal sent its Purchase Order to Manitoba by email.

- May 3, 2018 at 2:39 P.M., Andrea Werner received an email from Manitoba regarding that same Purchase Order that said: "Thanks and hope you are feeling better today!"

- June 4, 2018, the product was delivered and Berry Metal accepted delivery.

(ECF No. 1-2 at Ex. C; ECF No. 7 at p. 2; and ECF No.14 at p. 1). Manitoba argues that Berry Metal accepted the Sales Order and Terms of Sale when Berry Metal, later the same day, emailed its Purchase Order to Manitoba in response to the Sales Order. The Purchase Order makes no reference to the provisions of the Sales Order and Terms of Sale. Under 2-207, Berry Metal was required to provide conditional assent and/or provide notice of objection to Manitoba if it did not wish to be bound by the terms of Manitoba's Sales Order. *See* 13 Pa.C.S. § 2207; N.Y. U.C.C. Law § 2-207. Berry Metal argues that it did not accept the Sales Order or Terms of Sale; rather it asserts that its Purchase Order formed the basis for the parties' contract. Absent any communication of conditions or objections from Berry Metal to Manitoba in its Purchase Order, Berry Metal's email constituted its acceptance of Manitoba's Sales Order and Terms of Sale

---

[1] The Terms of Sale includes a provision that New York law applies. While the Court has not been asked to comment on the effect of that particular provision, it acknowledges that Section 2-207 of the U.C.C. are identical under both Pennsylvania and New York statutes.

Thus, Berry Metal accepted Manitoba's provisions contained within the Sales Order and Terms of Sale. This included the express limitations on "all other indemnities or warranties, whether express or implied, including the implied warranties of merchantability and fitness for a particular purpose." (ECF No. 3-1, Ex. 2 at ¶¶ 5-6).[2] Accordingly, Manitoba's Motion to Dismiss Berry Metal's, claim for Breach of Implied Warranties (Count II) is granted and said count is dismissed.

Further, by the limitation on damages language contained in the Sales Order and Terms of Sale (ECF No. 3-1, Ex. 2 at ¶¶ 5-6), Berry Metal is barred from pursuing any incidental or consequential damages as pleaded in the *ad damnum* clauses of Counts I through IV. Therefore, Manitoba's Motion to Dismiss Berry Metal's claims for incidental or consequential damages is granted. Said claims for damages in all counts are dismissed. Pursuant to the same language within the Sales Order and Terms of Sale, punitive damages are contractually precluded. Thus, Manitoba's Motion to Dismiss Berry Metal's claims for punitive damages in Counts III and IV is granted. Plaintiff's claims for punitive damages, as contained within the ad damnum clause of Counts III and IV, are dismissed.

### b. Berry Metal's Tort Claims

Manitoba argues that the tort claims, Count III, Negligence, and Count IV, Strict Liability, are barred pursuant to the economic loss doctrine and/or gist of the action doctrine. The two doctrines, gist of the action and economic loss, are closely related. Both doctrines are "designed to maintain the conceptual distinction between breach of contract claims and tort claims." *See*

---

[2] "Limitation of liability clauses are routinely enforced under the Uniform Commercial Code when contained in sales contracts negotiated between sophisticated parties and when no personal injury or property damage is involved." *Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 203 (3d Cir. 1995)

*Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 548 (3d Cir. 2010) (applying gist of the action doctrine); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002) (applying economic loss doctrine) (interior citations omitted). The gist of the action doctrine precludes "plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Pediatrix*, 602 F.3d at 548. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski*, 286 F.3d at 671 (internal citation omitted).

The Third Circuit in *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 103 (3d Cir. 2001) stated that "[t]he "gist-of-the-action" test is a better fit for [a] non-products liability case." *Id.* at 103, fn. 11. Berry Metal argues that this case is a product liability case; and therefore, it should be considered pursuant to an "economic loss doctrine" analysis. (ECF No. 6 at p. 12). Under prior ideations of the economic loss doctrine, the Third Circuit observed that "[a]s it originally developed, the economic loss doctrine provided that no cause of action could be maintained in tort for negligence or strict liability where the only injury was "economic loss"—that is, loss that is neither physical injury nor damage to tangible property." *2-J Corp. v. Tice*, 126 F.3d 539, 541 (3d Cir. 1997). Berry Metal argues that the damage caused to the crucibles establishes property damage, such that the economic loss doctrine does not preclude its tort claims. (ECF No. 1-1 at ¶ 15).

Recently, the Pennsylvania Supreme Court decided *Dittman v. UPMC*, 196 A.3d 1036 (2018), in which The Court provided a useful discussion of the applicability of the economic loss doctrine. *Dittman* addressed the duty of an employer to secure an employee's personal information and whether that duty arose from the employer/employee relationship arising from contract or as a matter of a social duty arising from tort. While the facts of *Dittman* do not concern product

liability, the Pennsylvania Supreme Court acknowledged that a plaintiff may maintain a tort claim where there is purely economic loss, but only where the duty at issue arose outside of the terms of the contractual obligations. *Id.* In *Dittman*, the Court noted, "applying the economic loss doctrine [...] 'turns on the determination of the source of the duty plaintiff claims the defendant owed.' Specifically, if the duty arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action." *Id.* at 1054 (Pa. 2018)(citations omitted). In clarifying the central inquiry into duty, the court also endorsed the South Carolina Supreme Court decision of *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 463 S.E.2d 85 (1995), which held that, "the question [...] is not whether the damages are physical or economic." *Id.* at 88. The essential question is whether the duty at issue is contract based or tort based. Thus, as to the applicability of the economic loss doctrine, the existence of damage to tangible property component is not determinative; rather the determinative focus is upon the source of the duties vis-a-vis the parties.[3] *Dittman, supra.*

Presently, Manitoba's duty to Berry Metal was to deliver its product conforming to Berry Metal's specifications as FM1200. The requirement that the product was to have a specific level of purity, FM1200, was a component of the Contract. *See* ECF No. 1-2 at ¶ 6-8. Where Plaintiff alleges that the product delivered was not of the specified minimum purity, the essence of plaintiff's claim is a breach of contract. Any damages, that are due as a consequence of

---

[3] As noted above, the Terms of Sale include a provision that New York Law applies. Plaintiff, Berry Metal, argued against the applicability of Terms of Sale and ignored this provision in its briefing. Likewise, outside of the battle of forms argument, Defendant, Manitoba has neither cited to any New York or Second Circuit precedent nor advocated that New York law applies to any extra-contractual claims. However, the Court has reviewed the economic loss doctrine under New York law and finds that it would support the same conclusion. *See e.g. Trump Int'l Hotel & Tower v. Carrier Corp.*, 524 F. Supp. 2d 302, 307 (S.D.N.Y. 2007).

9

Manitoba's failure to perform such contractual duty, are determined by the contract terms between the parties and contract law. As merchants, the parties had the ability to establish the terms by which each would be bound through their contract terms. The terms by which they are bound control the remedies available to Berry Metal. *See, e.g.* 13 Pa.C.S. § 2719; N.Y. U.C.C. Law § 2-719. All damages claimed by Berry Metal relate to contractual duties. As such, notwithstanding, Plaintiff's efforts to recharacterize the non-conforming product as a defective product, the essence of the duty arises under the parties' contract. There is no independent social or tort duty in this case.

Therefore, under both the gist of the action and the economic loss doctrine, Berry Metal cannot prevail in its tort claims for negligence or strict liability. Manitoba's Motion to Dismiss, as to Counts III and IV, is granted. Count III, Negligence, and Count IV, Strict Liability of Plaintiff's Complaint are dismissed.

### c. Attorney's Fees

With the above disposition of claims, the only remaining question is whether Berry Metal may maintain a claim for attorney's fees under its Breach of Contract (Count I) claim. Under Pennsylvania law, "litigants bear responsibility for their own attorneys' fees in the absence of express statutory authorization for fee awards, contractual fee-shifting, or some other recognized exception." *Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 619 Pa. 438, 445, 64 A.3d 1058, 1062 (2013). Berry Metal's Complaint avers no facts that would establish any statutory or contractual authority to recover attorney's fees. Rather, Plaintiff, Berry Metal, argues that it can maintain the ability to recover attorney's fees via Fed. R. Civ. P. 11, based upon an assertion that Manitoba argued unfounded positions in its Motion to Dismiss. (ECF No. 6 at p. 10). Given that this Court is ruling in favor of Manitoba's positions in its Motion, Berry Metal's

argument for attorney's fees lacks merit. Accordingly, Manitoba's Motion to Dismiss Berry Metal's claims for attorney's fees is granted. Berry Metal's claims for attorney's fees are dismissed.

**IV.     Conclusion**

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 3) pursuant to Fed. R. Civ. P. 12(b)(6) is granted. Count II, Breach of Implied Warranties, Count III, Negligence, and Count IV, Strict Liability, of Plaintiff's Complaint are dismissed. As regards Count I, Breach of Contract, Plaintiff's claims for incidental, consequential, and punitive damages are dismissed. Further, Plaintiff's claims for attorney's fees are dismissed.

## **ORDER**

AND NOW, this 5th day of February, 2019, after careful consideration of the Complaint (ECF No. 1-2), Defendant's Motion to Dismiss and Brief in Support (ECF No. 3 and 4), Plaintiff's Brief in Opposition (ECF No. 6), Defendant's Reply Brief (ECF No. 7), Plaintiff's Sur-Reply Brief (ECF No. 10), and Defendant's Sur-Sur-Reply Brief (ECF No. 14), the arguments of counsel, and for the reasons stated above, Defendant, Manitoba's, Motion to Dismiss for failure to state a claim is GRANTED. Count II, Breach of Implied Warranties, Count III, Negligence, and Count IV, Strict Liability, of Plaintiff's Complaint are dismissed. As regards Count I, Breach of Contract, Plaintiff's claims for attorney's fees, and incidental, consequential, and punitive damages are dismissed.

Defendant, Manitoba, shall Answer by February 19, 2019.

BY THE COURT:

Marilyn J. Horan
United States District Judge